# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **RAMON WEBB** ) | |
| ) | |
| **Petitioner** ) | |
| ) | No. 02-CV-06086 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| **GUY D PIERCE, Warden, Lawrence** ) | |
| **Correctional Center,** ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court is the 28 U.S.C §2254 petition for the writ of habeas corpus filed by Ramon Webb ("Petitioner"). For the reasons stated below, this petition is DENIED. All other motions are MOOT and TERMINATED. This case is CLOSED.

## BACKGROUND[1]

Following a jury trial, in which the following evidence was presented, Petitioner was convicted of first degree murder and sentenced to a prison term of 55 years.

Cameron Lee was shot to death on the evening of January 18, 1995, while he was walking with Patricia Calhoun ("Calhoun"). When police arrived, Calhoun gave them a description of the assailant's clothing, described a gray car that had sped away from the scene

---

[1]Unless rebutted by clear and convincing evidence, findings of fact made by the state courts in this case are presumed to be correct. *See Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000).

immediately after the killing, and quoted the victim as saying either "Longstreet" or "Loanshark" immediately before his death.  Calhoun repeated these details to investigating officers the next morning, but at this point mentioned that the assailant was in fact the Petitioner, whom she had known previously and identified by the name "Mone."  Calhoun later led police to Petitioner's home.  Petitioner attempted to evade police by hiding in his home and then supplying several false names.  Calhoun identified Petitioner as the assailant at a subsequent police lineup.

At trial, the prosecution presented the testimony of Chanita Fowler ("Fowler"), at the time the Petitioner's girlfriend.  At the time of the shooting, the two were residing with Petitioner's family at 6740 South Paulina.  Fowler testified that she spent part of the evening of the shooting with Defendant (current Petitioner) and others in the basement of that residence.  At 10:30 p.m., Defendant left the apartment and Fowler fell asleep.  She woke up when Defendant knocked on the door, sometime between midnight and 12:30 a.m.  She did not see Defendant in possession of a gun at that time.  She went back to sleep after he entered the apartment.  She woke up again when her friend Renee knocked at the door.  Renee was upset and said that a man named "Cameron" had been shot.

Fowler testified that she asked Defendant about the shooting the next day.  Fowler asked the defendant who shot the victim and why the victim was shot.  Initially, she testified that he answered her.  She then immediately changed her answer, and stated that he did not respond to her query.  The prosecutor then asked for leave to proceed as if on cross-examination.  Defense counsel offered no specific objection, but stated that "this is the State's witness.  They called her." The trial court then granted the request.

Subsequently, the prosecution elicited from Fowler that she had given several statements to police and prosecutors to the effect that, on the day following the shooting, Defendant said that he had shot the victim for stealing cocaine from him. Fowler also admitted to testifying before the grand jury that Defendant had confessed to the murder on the day after the killing. In addition, Fowler admitted to making similar statements to the prosecutor immediately before trial, as well as describing the confession in a signed, written statement on February 9, 1995. Fowler testified that her appearance on the witness stand was the first time she had hesitated in recounting Defendant's confession. She further stated that she had never before told the prosecutor that Defendant did not answer her question about the victim's murder, or that her statements recounting the confession were not the truth. The assistant state's attorney who presented Fowler to the grand jury also testified, stating that he never threatened Fowler or told her what to say before the grand jury.

Petitioner did not present any evidence zat trial. The court's instructions to the jury included Illinois Pattern Jury Instructions, Criminal No. 3.11 (3d ed. 1992) ("I.P.I. Criminal 3.11") regarding the use of prior inconsistent statements. Those instructions state in their entirety:

> The believability of a witness may be challenged by evidence that on
> some former occasion he [(made a statement) (acted in a manner)] that
> was not consistent with his testimony in this case. Evidence of this kind
> [ordinarily] may be considered by you only for the limited purpose of
> deciding the weight to be given the testimony you heard from the witness
> in this courtroom. [However, you may consider a witness's earlier
> inconsistent statement as evidence without this limitation when [1] the
> statement was made under oath at a [(trial) (hearing) (proceeding)]. [or]
> [2] the statement narrates, describes, or explains an event or condition the
> witness had personal knowledge of and [a] the statement was written or
> signed by the witness. [or] [b] the witness acknowledged under oath that
> he made the statement. [or] [c] the statement was accurately recorded by a

tape recorder, videotape, recording, or a similar electronic means of sound recording.] It is for you to determine [whether the witness made the earlier statement, and, if so] what weight should be given to that statement. In determining the weight to be given to an earlier statement, you should consider all of the circumstances under which it was made.

I.P.I. Criminal 3.11. Before the instructions were read, defense counsel requested that the second paragraph of this pattern language be struck because the personal knowledge exception did not apply. The request was denied. The jury found Petitioner guilty of first-degree murder.

During sentencing, the prosecution presented victim impact statements as aggravating factors, while Petitioner tried to mitigate by denying that he distributed cocaine,[2] expressing his condolences to the family, and generally maintaining his innocence. In determining Petitioner's sentence, the trial court considered, among other things, the pre-sentence investigation report, victim impact statements, statements by counsel, Petitioner's statements, facts and circumstances of the case, and Petitioner's background including his lack of a criminal history. According to the court, the final sentence of 55 years imprisonment was intended to deter not only the Petitioner, but other individuals as well.

On his appeal to the Appellate Court of Illinois, First Judicial District, Petitioner's claims included: (1) insufficiency of the evidence; (2) abuse of court discretion through admission of Fowler's prior statements and denial of fair trial through prosecution's use of these statements; (3) improper bolstering of Calhoun as a witness; (4) denial of fair trial through improper closing arguments; (5) denial of fair trial through use of evidence of other crimes; and (6) abuse of

---

[2]This was presumably intended to counteract the Prosecution's suggestions at closing that the Petitioner was heavily involved in drug transactions. (Order App. Ct. Ill. pp. 21-22). These remarks were challenged as improper at the appellate proceedings, but were addressed at that stage and are not before this court.

discretion based on the severity of the sentence. An opinion written by Judge Joseph Urso conceded that Fowler's prior statements should not have been admitted, but nonetheless found their content cumulative and deemed the error harmless. All other claims for relief were denied outright.

Petitioner then requested a rehearing, stating that, among other claims, Fowler's statements were not cumulative. This request was denied. Petitioner next requested leave to appeal to the Supreme Court of Illinois based in part on the allegedly improper admission and repetition of Fowler's statements. The Supreme Court denied this petition but demanded that the Appellate Court resolve other "outstanding issues." Petitioner also filed a pro se post-conviction petition for relief under 725 ILL. COMP. STAT. 5/122-1 (1992), claiming that his constitutional rights were denied by: (1) police errors in failing to disclose documents; (2) the allegedly excessive sentence; and (3) multiple errors at trial that amounted to ineffective assistance of counsel. This request was denied.

On April 9, 2001, Petitioner filed a habeas petition in this Court.

## **HABEAS CORPUS STANDARDS**

Federal courts may not grant a writ of habeas corpus to a prisoner held under a state court judgment unless custody of the prisoner violates the Constitution, laws, or treaties of the United States. 28 U.S.C. §2254 (a); *Mahaffey v. Schomig*, 294 F.3d 907, 914 (7th Cir. 2002). If the reviewing court determines that such a defect exists in the judgment or sentence, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

Before a federal court may grant a habeas petition, the petitioner must exhaust his or her state remedies. *Mahaffey*, 294 F.3d at 914-915. This occurs when: (1) the petitioner has presented claims to the highest court of the state; or (2) the petitioner has no remaining state remedies available at the time that the petition is filed. *See Farrell v. Lane*, 939 F.2d 409, 410-11 (7th Cir. 1991), *cert. denied*, *Farrell v. McGinnis*, 502 U.S. 944, 112 S.Ct. 387, 116 L.Ed.2d 337 (1991).

In addition, a habeas petitioner must comply with state rules regarding procedural default. *Mahaffey*, 294 F.3d at 915. Procedural default occurs either when: (1) a petitioner fails to raise an issue on direct appeal or post-conviction review, *see Farrell*, 939 F.2d at 410; or (2) the state court clearly relies on a state procedural bar as an independent basis for its denial of relief, *see Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). In order to avoid procedural default, a petitioner must fairly present the claim "at each and every level in the state court system…" *See Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). As the Seventh Circuit has noted, "[a] habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at *each level* of state court review has procedurally defaulted that claim." *Lewis*, 390 F.3d at 1026 (internal citations omitted) (emphasis added). If a petitioner has procedurally defaulted on any given claim, this Court can only grant relief if: (1) there is adequate cause for his failure to raise the claim in state court and prejudice resulting from the default; or (2) default would result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).

To prevail on the merits, a habeas corpus petitioner must show that adjudication of the case: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2), was based on an unreasonable interpretation of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. §2254(d). The first ground pertains to pure questions of law. *See Lindh v. Murphy*, 96 F.3d 856, 868-69 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997). The second ground pertains to mixed questions of law and fact. *Id.* at 870. To warrant relief, the state court error must be "grave enough to be called 'unreasonable,'" *id.,* meaning that the decision will stand if it is "one of several equally plausible outcomes," *Hall v.Washington*, 106 F.3d 742, 748-49 (7th Cir. 1997). A state court's application of Supreme Court precedent is reasonable if it is "at least minimally consistent with the facts and circumstances of the case." *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997), *cert. denied, Hennon v. Cooper*, 522 U.S. 819 (1997). With respect to this second ground, state court factual determinations are presumed to be correct unless Petitioner can rebut that presumption with clear and convincing evidence. *Mahaffey*, 294 F.3d at 915; 28 USC §2254(e)(1).

Even where a federal court reaches the merits of a petitioner's claim, relief is only warranted in certain extraordinary circumstances. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). After reviewing the Petitioner's motion, the government's response, and any record of prior court proceedings, the court will determine whether an evidentiary hearing is required. *See* Rule 8(a) of the Rules Governing Section 2255 Proceedings. "If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the [court] shall make an order of summary

dismissal." *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings; *see also Liss v. United States*, 915 F.2d 287, 290 (7th Cir. 1990).

## ANALYSIS

Petitioner offers four possible grounds for habeas relief. First, he alleges that his rights under the Fifth Amendment of the United States Constitution were violated when Terrance Jones testified at the grand jury proceedings for his criminal case. Second, he argues that his rights under the Sixth Amendment of the United States Constitution were violated when Chanita Fowler's testimony was admitted and the trial court improperly instructed the jury under I.P.I. Criminal 3.11. Third, he argues that his rights under the Sixth and Fourteenth Amendment of the United States Constitution were violated when his trial counsel failed to call Levora Jones. Fourth, he argues that his rights under the Illinois Constitution were violated when his trial counsel failed to mitigate his sentence.

### *Ground I*

Petitioner claims that his Fifth Amendment rights were violated when Terrance Jones allegedly lied to the grand jury about Petitioner's involvement in the crime, which resulted in "miscarriaging the process of Law and Justice." Petitioner states that "said Testimony was key in having this indictment handed down in order to have a trial and subsequent conviction and sentencing." He then adds that a new affidavit from Jones is "exculpating evidence." In that affidavit, Jones states that the detectives who arrested him along with Webb on February 8, 1995 and the state prosecutor who wrote his statement told him that he would be charged with first degree murder if he did not lie to the grand jury. Jones also says that he was "pressured, threatened and coerced into signing a false and fabricated statement," and that he told both

Petitioner's counsel and the prosecutors that his grand jury testimony was false and that he was prepared to testify at trial that it was false. Based on the record, there is no indication that Jones's statement was used in any way at trial.

This is the first time that Petitioner raises this claim. Consequently, it is procedurally defaulted. "Fair presentment...requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (citing *Boerckel*, 526 U.S. at 845). In order to satisfy the requirement of fair presentment, the Seventh Circuit requires a petitioner to "raise the issue *at each and every level* in the state court system…" *Id.* (emphasis added). "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at *each level* of state court review has procedurally defaulted that claim." *Id.* at 1026 (emphasis added) (citations omitted). Petitioner did not argue in state court, as he does here, that Jones lied during his grand jury testimony.

Since Petitioner procedurally defaulted this claim, he must either demonstrate adequate cause to excuse his failure to raise the claims in state court and actual prejudice resulting from the defaults, or establish that denial of relief would represent a fundamental miscarriage of justice. *See Lewis,* 390 F.3d at 1026 (internal citations omitted). Petitioner provides no excuse for the default, and instead argues that his motion must be heard to avoid a miscarriage of justice. A petitioner may only overcome procedural default in this manner "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *See U.S. ex rel Hernandez v. Pierce,* 429 F.Supp.2d 918, 926 (N.D. Ill.

2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995)).

A claim of actual innocence is only credible where a petitioner supports his allegations of constitutional error with new reliable evidence that was not presented at trial. *See id.* He must show that in light of this new evidence, it is more likely than not that no reasonable juror would have convicted him. *See id.* (citation omitted). Moreover, "[a]s a general rule, newly discovered evidence that bears only on the question of guilt or innocence is not reviewable by a federal court on a motion for habeas corpus relief." *Coogan v. McCaughtry*, 958 F.2d 793, 801 (7th Cir. 1992). There are situations in which "newly discovered evidence is so compelling that it would be a violation of the fundamental fairness embodied in the Due Process Clause not to afford a defendant a new trial in which the evidence could be considered." *Id.* (internal quotation marks and citations omitted). However, this is not one of them. As the Seventh Circuit has observed, "where the 'newly discovered evidence' consists of witness recantations of trial testimony or confessions by others of the crime, most courts decline to consider it in the absence of any showing that the prosecution knowingly proffered false testimony or failed to disclose exculpatory evidence, or that petitioner's counsel was ineffective." *Moore v. Casperson*, 345 F.3d 474, 491 (7th Cir. 2003); *see also Coogan*, 958 F.2d at 801.

If Jones is to be believed, both sides knew that his statement was false prior to trial, or at least that Jones would recant the statement. That may explain why there is no indication in the record – and Petitioner does not argue – that Jones's statement played any role in the trial. Instead, Petitioner argues that Jones's testimony was "key" in the grand jury's decision to indict him. Yet Petitioner offers no proof that the statement was presented to the grand jury. Even if

this court is to assume that it was, prosecutors are not charged with presenting exculpatory evidence at grand jury proceedings. *See, e.g., U.S. v. Williams*, 504 U.S. 36, 52, 112 S.Ct. 1735, 1745, 118 L.Ed.2d 352 (1992) (concluding that requiring prosecutors to present exculpatory as well as inculpatory evidence would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body). Moreover, the new evidence does not indicate that Petitioner is innocent in any way. Instead, Petitioner seeks to establish that Jones lied to the grand jury. Even if Jones did lie to the jury, however, Petitioner fails to establish that it is more likely than not that a reasonable juror would not have convicted him. Therefore, Petitioner's Fifth Amendment claim fails.

## *Ground II*

Second, Petitioner argues that his right to a fair jury trial was violated through the admission of Chanita Fowler's testimony and the improper manner in which the jury was instructed under I.P.I. Criminal 3.11. This claim was properly presented to the state courts.

"The admissibility of evidence is generally a matter of state law." *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir. 1994), *cert. denied*, 513 U.S. 1076 (1995). Because of this, "evidentiary rulings...are matters that are usually beyond the scope of federal habeas review." *Perruquet v. Briley*, 390 F.3d 505, 511-12 (7th Cir.2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)). "Absent a showing that the admission of evidence violated a specific constitutional guarantee, a federal court can issue a writ of habeas corpus on the basis of a state court evidentiary ruling only when the ruling violated the defendant's right to due process by denying him a fundamentally fair trial." *Milone,* 22 F.3d at 702.

The Appellate Court of Illinois ruled that because Fowler's testimony was never hostile to the prosecution's case, they should not have been allowed to introduce her prior unsworn statements for impeachment purposes. (Order App. Ct. Ill. pp. 14-15). However, the court reasonably found that because the same information was properly introduced via section 115-10.1(c)(1) of the Illinois Code of Criminal Procedure of 1963 (725 ILCS 5/115-10.1 (West 2000)), allowing prior sworn statements to be admitted for their substance, there was no error under the ruling of *People v. Cruz*, 162 Ill. 2d 314, 359, 643 N.E.2d 636 (1994). Similarly, failure to appropriately use model jury instructions is not generally a basis for habeas relief. *See Estelle*, 502 U.S. at 71-75. In this instance, the Appellate Court considered the error in failing to strike the inappropriate language from I.P.I. Criminal 3.11, but found "no indication that the jury was misled by the court's instruction, and nothing in the record indicates that the result of the trial would have been different had the court granted defendant's request to strike certain portions of the instruction." (Supp. Order p. 9).

"[A] state defendant does have a Fourteenth Amendment due process right to a fundamentally fair trial," *Perruquet*, 390 F.3d at 511, and therefore we may issue a writ of habeas corpus in those cases in which the court's evidentiary ruling denied defendant that right. *See id.*; *Dudley v. Duckworth*, 854 F.2d 967, 972 (7th Cir.1988), *cert. denied*, 490 U.S. 1011 (1989). In this case, however, it cannot be said that petitioner was denied a fundamentally fair trial. In its Supplemental Order, the Appellate Court considered all the arguments made by defense counsel, reviewed the trial record in its entirety, and determined that under state rules the inappropriately-admitted testimony was cumulative and the improper jury instructions were harmless. It is not for this court to second guess a duly-considered evidentiary and jury

instruction ruling based upon state law. *See Estelle,* 502 U.S. at 63 (1991). Petitioner has therefore failed to demonstrate that the Illinois Appellate Court's decisions were contrary to or involved an unreasonable application of established federal law, in this case, the right to a fair jury trial. Consequently, Petitioner is not entitled to federal habeas relief on this ground.

### *Ground III*

Petitioner did not file a petition for leave to appeal the appellate court's dismissal of his post-conviction petition, *see* Resp't Answer Ex. N, and therefore procedurally defaulted the new claims that were presented in his post-conviction petition and not in his direct appeal. His claim regarding the ineffectiveness of counsel for failing to call Levora Jones is precisely such a claim. Since Petitioner procedurally defaulted this claim, he must either demonstrate adequate cause to excuse his failure to raise the claims in state court and actual prejudice resulting from the defaults, or establish a fundamental miscarriage of justice. "Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts. Prejudice is established by showing that the violation of the petitioner's federal rights worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *See Lewis,* 390 F.3d at 1026 (internal citations omitted). He makes no arguments with respect to either of those requirements. He also does not present a credible argument as to the fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. As the state appellate court noted, the testimony of Calhoun and Fowler would have contradicted Jones's version of events. It is not more likely than not that no reasonable juror would have convicted Petitioner based on the testimony of Levora Jones, an

individual who had a history of drug use, over that of eyewitness Calhoun and Petitioner's then-girlfriend Fowler. His claim is therefore barred.

### *Ground IV*

Petitioner's final claim is that his rights under the Illinois Constitution were violated and he was given an excessive sentence because of his trial counsel's ineffectiveness. Petitioner did not raise this claim in either his direct appeal or his post-conviction petition. While he did argue on direct appeal that the sentenced court erred imposing the fifty-five year sentence – an argument the appellate court rejected – he did not contend that his own trial counsel was ineffective for failing to "mitigate." He argued in his post-conviction petition that his counsel was ineffective – another argument that was rejected by the state appellate court – but did not argue that the ineffectiveness was related to any failures at sentencing. Given that Petitioner procedurally defaulted this claim, he must either demonstrate adequate cause to excuse his failure to raise the claims in state court and actual prejudice resulting from the defaults or establish a fundamental miscarriage of justice. He makes no arguments with respect to those requirements. His claim is therefore barred.

### Conclusion

For the foregoing reasons, Petitioner's request for habeas corpus relief is DENIED. This case is CLOSED. All other motions are MOOT and TERMINATED. This case is CLOSED.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **September 21, 2006**